GRIFFITH, Circuit Judge,
concurring in part and concurring in the judgment: I concur in the opinion of the majority except as to the reasoning in Section II.B. The analysis of the district court and the arguments of the parties focused almost entirely on whether a license renewal by the agency is “issued” under 7 U.S.C. § 2133. Although I agree with the majority that the agency’s scheme for renewing licenses is permissible under the Animal Welfare Act, 7 U.S.C. § 2131 et seq., I am more comfortable resting that determination upon the question that has driven this litigation.
The Act is silent, or at least ambiguous, as to what process (if any) is required for license renewals. As other courts have recognized, the plain meaning of “issue” does not necessarily include renewals. See Peole for the Ethical Treatment of Animals v. USDA, 861 F.3d 502, 509 (4th Cir. 2017); Animal Legal Def. Fund v. USDA, 789 F.3d 1206, 1216 (11th Cir. 2015). Nothing in the statute instructs the agency to require a renewal process at all. Even so, USDA has established a regulatory scheme for license renewals, but that scheme requires only the filing of an application, the payment of a fee, and self-certification of compliance with agency standards. See 9 C.F.R. §§ 2.1(d), 2.2(b), 2.5-2.7. We typically defer to an agency’s interpretation of the statute it administers so long as the statute is “silent or ambiguous with respect to the specific issue” and the interpretation is “reasonable.” Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
USDA argues that “issue” is ambiguous and the agency has interpreted the term to exclude renewals. As it explains, a license is “issued” only when first granted. After that, the same license is continued through an annual administrative process. The agency actually added language to its licensing regulations “necessary to avoid any misconception that every license automatically terminates at the end of its 1-year term.” Animal Welfare Regulations, 54 Fed. Reg. 10,835, 10,841 (Mar. 15, 1989).
In my view, it is perfectly reasonable for the agency to establish an administrative renewal scheme and allocate its limited resources elsewhere. Massachusetts v. EPA, 549 U.S. 497, 527, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) (“[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities.”). This allows the agency to focus on initial license applications and unannounced inspections. Animal Welfare; Inspection, Licensing, and Procurement of Animals, 69 Fed. Reg. 42,089, 42,094 (July 14, 2004); see also Animal Legal Def. Fund, 789 F.3d at 1224 (finding that the renewal scheme reasonably balanced Congress’s “conflicting policy interests” of licensee due process rights and animal health and welfare). We should defer to the agency’s judgment. See Chevron, 467 U.S. at 844, 104 S.Ct. 2778 (“[C]onsidera-ble weight should be accorded to an executive department’s construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations.”).
The majority sidesteps the meaning of “issue” because, in its view, the explanation the agency has advanced in this case is nothing more than a post-hoc litigation *622 strategy. According to the majority, the agency has never actually interpreted the term and therefore is not entitled to deference. “The regulations say nothing about the meaning of the term ‘issue’ under 7 U.S.C. § 2133 and do not suggest that USDA has ever interpreted that section not to encompass license renewal.” Maj. Op. at 615.
I read the agency regulations differently. When the Act first became law, the renewal process the agency created required only the paying of a fee and the filing of revenue receipts. Laboratory Animal Welfare, 32 Fed. Reg. 3270, 3271 (Feb. 24, 1967). No demonstration of compliance was required. That was called for in an entirely separate section of the regulations related to the “[ijssuance of licenses.” Id. The regulation of renewals came four sections later. See id.
The majority notes a later revision to the regulations requiring that “each applicant for a license or renewal of a license must demonstrate compliance with the regulations and standards.” Maj. Op. at 614 (emphasis in majority opinion) (quoting 54 Fed. Reg. at 10,840). But this revision also removed “before a license will be issued” from the same provision on the ground that it was incongruent with renewals. 54 Fed. Reg. at 10,840; see Animal Welfare, 54 Fed. Reg. 36,123, 36,149 (Aug. 31, 1989). The clear implication is that the agency never understood “issue” to include renewals.
I would join our sister circuits and defer to USDA’s considered judgment that a renewal is not “issued” under § 2133, and that its renewal scheme is therefore a permissible interpretation of the Act. See People for the Ethical Treatment of Animals, 861 F.3d at 508-12; Animal Legal Def. Fund, 789 F.3d at 1215-25. Because the majority is clear that its analysis does not “reach the ‘issue’ issue,” Maj. Op. at 618, there is nothing in the opinion that prevents the agency from interpreting “issue” as it has in its arguments to us.